IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIE JAMES HOUSTON (N-11484), ) | |
| ) | |
| Plaintiff, ) | Case No. 1:16-cv-08861 |
| ) | |
| v. ) | Judge Charles P. Kocoras |
| ) | |
| RANDY PFISTER, et al., ) | |
| ) | |
| Defendants. ) | |

## SECOND AMENDED COMPLAINT

Plaintiff Willie James Houston, complains against Defendants Marcus Allen, Barney Sullivan, and Randy Pfister ("Defendants") as follows:

## NATURE OF THE CASE

1. On July 18, 2016, Plaintiff asked prison guards to remove him from his cell because he received threats from his cellmate, who accused him of being a "snitch" and a "bitch." Plaintiff was not moved and was subsequently physically attacked by his cellmate.

2. During the attack, Plaintiff was kicked and punched repeatedly, resulting in numerous physical injuries to his body. Plaintiff recalls the attack lasting for thirty minutes before Plaintiff was able to get a guard's attention. Plaintiff sustained numerous injuries as a result of the attack. Due to the delay in medical attention after the attack, Plaintiff's injuries worsened.

## JURISDICTION AND VENUE

3. Defendants violated Plaintiff's civil rights while acting in their official capacities at Stateville Correctional Center ("Stateville").

4. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C. § 1983.

5. The incidents that form the basis of this Complaint took place in Cook County, Illinois. Venue is thus proper under 28 U.S.C. § 1391.

## PARTIES

6. Plaintiff Willie Houston, at all times relevant to this Complaint, resided at Stateville Correctional Facility, an Illinois Department of Corrections ("IDOC") facility, as an inmate.

7. From approximately 1993 through approximately 2003, Mr. Houston served as a police informant.

8. Defendant Marcus Allen, at all times relevant to this Complaint, worked at Stateville as a correctional officer acting under color of state law, who had a duty to protect inmates at Stateville. Mr. Houston sues Defendant Allen in both his official and personal capacities.

9. Defendant Barney Sullivan, at all times relevant to this Complaint, worked at Stateville as a correctional sergeant acting under color of state law, who had a duty to protect inmates at Stateville. Mr. Houston sues Defendant Sullivan in both his official and personal capacities.

10. Defendant Randy Pfister, at all times relevant to this Compliant, worked at Stateville as a warden acting under color of state law, who enacted and enforced official policies at Stateville. Mr. Houston sues Defendant Pfister in both his official and personal capacities.

## FACTUAL BACKGROUND

11.    Houston cooperated with law enforcement to prosecute gang members from approximately 1993 to 2003.

12.    Stateville is a maximum security prison facility operated by the IDOC.

### Houston Sought Protective Custody

13.    On July 15, 2016, Mr. Houston told Officer Furlow at Stateville Correctional Center ("Stateville") that he was a former gang member who previously provided information to police on several gangs, many of which had members incarcerated at Stateville.

14.    Mr. Houston told Furlow that because he was an informant, incarcerated gang members previously assaulted him on two separate occasions while in Stateville's minimum security unit and he was therefore seeking housing in Stateville's protective custody unit.

### July 18, 2016 Physical Attack

15.    On July 18, 2016, Mr. Houston was placed in a cell located in Stateville's protective custody unit with Trevaughan Bowers, a twenty-eight-year-old inmate.

16.    Bowers called Mr. Houston a "snitch" and a "bitch."

17.    A "snitch" is used to describe someone who reports crimes to police. A "bitch" is used in combination with "snitch" to demean and belittle a person who is viewed as betraying an unwritten honor code by providing police with information.

18.    Later in the day on July 18, 2016, Mr. Houston told Allen that Bowers called him a "snitch" and a "bitch," and that Bowers threatened to break every bone in his body if he did not get out of the cell.

3

19. During that same conversation, Houston asked Allen to move him to a different cell.

20. Mr. Houston told Allen that Bowers knew Houston was a former gang informant.

21. Allen told Mr. Houston to express his concerns to Sullivan after yard time ended, but Allen did not agree to change Mr. Houston's cell.

22. Next, Mr. Houston told Sullivan about Bowers' threats, and again asked to be moved to another cell. Mr. Houston told Sullivan that his cellmate threatened to do him bodily harm and that he needed Sullivan to move him to another location within the protective custody unit.

23. Sullivan yelled at Mr. Houston that he did not want to hear it. Sullivan did not move Mr. Houston to another cell.

24. After Mr. Houston's conversation with Sullivan, Allen came to Mr. Houston's cell and told Bowers that Sullivan wanted to speak with him. Allen then removed Bowers from the cell, and Allen and Sullivan began questioning Bowers about Mr. Houston's complaints. Mr. Houston overheard at least part of the interaction between Allen, Sullivan, and Bowers.

25. Mr. Houston heard Bowers tell Allen and Sullivan that he could not live "peaceably" with Mr. Houston, and that the situation in the cell was very hostile.

26. After Sullivan and Allen questioned Bowers, Allen returned Bowers to the cell with Mr. Houston.

27. When Allen returned Bowers to the cell, Mr. Houston told Allen that he wanted to speak with the cell house lieutenant.

28. The cell house lieutenant did not come to Mr. Houston's cell, and Mr. Houston was not otherwise given an opportunity to speak with the cell house lieutenant.

29. Moments after Allen left the cell, Bowers again called Mr. Houston a "snitch" and a "bitch," and Bowers hit Mr. Houston in the head. Bowers kicked, punched, and hit Mr. Houston with an open and closed hand. Bowers beat Mr. Houston's neck, legs, head, shoulders, and back.

30. During the attack on Houston, Bowers stopped twice to take a break. Both times, following the break, Bowers resumed beating Houston.

31. During the attack, Mr. Houston repeatedly yelled for help, nobody came to the cell.

32. Bowers' attack left Mr. Houston bleeding from his head and face. Mr. Houston sustained bruises on his face and body.

33. Allen later returned to the cell, noticed Mr. Houston was hyperventilating and had been assaulted. Mr. Houston asked Allen for help.

34. Allen then removed Mr. Houston from the cell, and placed him in "holding."

35. While in holding, Investigative Officer Milsap interviewed Houston about his beating. Officer Milsap took notes. While in holding, pictures of Houston were taken.

36. During Officer Milsap's interview, the medical examiner, Mr. Barnes, examined Mr. Houston who had several wounds on his head and a large bruise on his right shoulder.

37. Mr. Houston was not sent to the hospital.

38. After the interview, Officer Milsap told Mr. Houston he would be placed in under an investigative status until the attack was fully investigated.

39. Mr. Houston was then placed in a general population environment even though Mr. Houston reminded Officer Furlow about his status as a gang informant.

40. Mr. Houston asked to be placed in protective custody, but his request was not granted.

41. Mr. Houston was placed in a cell within earshot of Bowers, who Mr. Houston heard calling him a "snitch" and a "bitch." Bowers drew unwanted attention to Mr. Houston by informing other inmates that he was a gang informant.

42. Because Bowers continued to taunt Mr. Houston, Mr. Houston filed an emergency grievance.

**Houston Blamed For His Own Assault**

43. On July 20, 2016, Mr. Houston was notified by internal affairs that he was placed under investigative status.

44. Mr. Houston was placed in segregation, under 24/7 lockdown.

45. On July 24, 2016, Mr. Houston was notified that he was being charged with "301 fighting" arising from the attack.

46. On August 2, 2016, he was taken to a hearing, at which point the charge against Mr. Houston was dismissed based on a finding that Mr. Houston was not the aggressor.

6

**Houston Returned To General Population - No Protection**

47.     On August 8, 2016, Mr. Houston was moved from segregation, a portion of the prison where inmates are separate from each other most of the day, to general population.

48.     Again, Mr. Houston was placed in a cell with another inmate. He was not returned to protective custody nor was he given a single person cell.

49.     Mr. Houston submitted grievances and complained about his housing placement to Warden Pfister, but was not moved to protective custody or given a single person cell.

50.     After the assault, Mr. Houston experienced dizziness, nausea, and acute pain and stiffness in his legs, back, and shoulders.

51.     Mr. Houston repeatedly tried to schedule an appointment to see a doctor, but did not receive an appointment until more than three weeks after he was attacked by Bowers.

52.     On August 13, 2016, Dr. Aquinaldo prescribed Robaxin (a pain relieving muscle relaxant) and a low bunk due to his injuries from the July 18, 2016 attack.

53.     Due to Mr. Houston's safety concerns, he oftentimes did not leave his cell, skipped yard time, and missed meals.

54.     Despite his repeated requests for medical attention, Houston did not receive any additional medical attention.

**Unanswered Emergency Grievance**

55.     On July 24, 2016, Houston filed an emergency grievance detailing the assault and lasting physical pain requiring medical attention.

7

56. Approximately six weeks or more after filing an emergency grievance, Houston received no response.

57. Due to the injuries sustained and the prison's failure to respond to his emergency grievance, Houston mailed this Complaint on September 8, 2016, which was received and filed by this Court on September 12, 2016.

## COUNT I

*Eighth Amendment Claim for Failure to Protect Against Marcus Allen and Barney Sullivan*

58. Plaintiff realleges and incorporates by reference Paragraphs 1-57 of the Second Amended Complaint.

59. Marcus Allen and Barney Sullivan failed to intervene to prevent or mitigate the injuries resulting from attacks by Bowers.

60. Marcus Allen and Barney Sullivan have shown deliberate indifference to the safety of Houston. Their acts and failures to act have harmed Houston's rights under the Eighth Amendment.

61. Defendants had notice of Bowers' intent to harm Houston and were deliberately indifferent in failing to remedy the problem.

62. At all times relevant, Houston faced a significant and imminent risk of sustaining future injuries due to Defendants' failure to intervene in attacks, in violation of Houston's rights under the Eighth Amendment.

63. Mr. Houston has an ongoing and actual controversy that is likely to be redressed by Court action.

64. If injunctive relief is not granted, Houston will suffer irreparable injuries for which there is no adequate remedy at law.

## COUNT II

### *Eighth Amendment Claim For Failure to Protect Against Randy Pfister*

65. On June 5, 2017, this Court granted Defendant Pfister's motion to dismiss Count II of Plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 48.) Plaintiff, therefore, reserves all rights with respect to Count II, but does not re-allege Count II in this Second Amended Complaint.[1]

## COUNT III

### *Eighth Amendment Claim for Medical Indifference Against Sullivan and Allen.*

66. After July 18, 2016, Mr. Houston had a serious medical need due to injuries sustained from the July 18, 2016 attack.

67. Sullivan and Allen each knew that Mr. Houston suffered physical injuries during the July 18, 2016 attack because they each saw him after the attack took place.

68. Houston's injuries were such that even a lay person would perceive the need for a doctor's attention.

---

[1] *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782 (7th Cir. 2013) (in an amended complaint, failure to re-allege a claim previously dismissed under Fed. R. Civ. P. 12(b)(6) does not constitute abandonment or waiver); *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 683 (7th Cir. 1990) ("It is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected.").

69. Officers Allen and Sullivan saw Mr. Houston's bruises and other injuries resulting from the assault.

70. Officers Allen and Sullivan failed to request Houston a low bunk bed.

71. Defendants Allen and Sullivan were deliberately indifferent to Houston's serious medical needs by failing to send him to a hospital immediately after the attack and delaying his access to a doctor thereafter. Mr. Houston's brief interaction with a medical examiner was insufficient to address his serious medical needs.

72. Defendants Allen and Sullivan's failure to provide objectively necessary medical attention to Mr. Houston was objectively unreasonable, and undertaken intentionally, and with deliberate indifference and/or reckless disregard for Mr. Houston's rights.

73. Houston's lasting and compounded injuries were caused by Defendants Allen and Sullivan.

74. Defendants Allen and Sullivan, at all times relevant, acted under color of state law.

WHEREFORE, Plaintiff Houston requests that this Court award the following:

    (a) an injunction ordering Defendants to only house Houston in protective custody;

    (b) an injunction ordering that Houston never be placed in Stateville;

    (c) compensatory damages in an amount to be determined by Houston for his individual injuries, jointly and severally against defendants;

    (d) punitive damages in an amount to be determined, jointly and severally against the defendants;

  (e)  costs and reasonable attorneys' fees to the Plaintiff; and

  (f)  grant such other and further relief as this Court deems equitable, just and proper.

### JURY DEMAND

75. Plaintiff demands a trial by jury.

Dated: February 23, 2018      Respectfully submitted,

*[signature]*

Benjamin O'Connor
Cristina Almendarez
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200
Email: benjamin.oconnor@kirkland.com
    cristina.almendarez@kirkland.com

*Counsel For Plaintiff Willie James Houston*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2018, I electronically filed the foregoing document with the Clerk of the Court for the United States Court for the Northern District of Illinois by using the CM/ECF system, that service will be accomplished by the CM/ECF system for Defendants Marcus Allen and Randy Pfister, and that service will be accomplished by process server for Defendant Barney Sullivan.

Benjamin R. O'Connor